IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| SECURITY FIRST INNOVATIONS, LLC, | ) | Case Number: 2:23-cv-00097-JKW-RJK |
| | ) | |
| Plaintiff, | ) | ORDER RE: DISCOVERY |
| | ) | OF ELECTRONICALLY STORED |
| vs. | ) | INFORMATION |
| | ) | |
| GOOGLE, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.     Purpose

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

## II.    Cooperation

The parties are aware of the importance the Court, consistent with Rule 1 of the Federal Rules of Civil Procedure, places on cooperation and commit to cooperate in good faith throughout the matter.

## III.   Proportionality

The parties agree to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information consistent with Fed. R. Civ. P. 26(b)(1).[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

preservation and discovery issues. A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

## IV.    Cost-Shifting

As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

## V.    Preservation

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a)    Only ESI created or received before November 30, 2026 will be preserved, except that if this litigation extends beyond that date, the parties will meet and confer on whether it is necessary to extend the cut-off date.

b)    Each party shall provide a specific listing and identification[2] of the ten (10) most significant custodians. The exchange of this information shall occur twenty-one (21) days after this Order is entered by the Court.

c)    The following data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced:

1.   backup systems and/or tapes used for disaster recovery; and
2.   systems no longer in use that cannot be accessed.

---

[2] A "specific identification" requires a short description of why the custodian is believed to be significant.

d)      The parties agree that the following ESI categories are inaccessible data sources due to undue burden and/or expense, and/or that the information is more reasonably available elsewhere, and thus agree that they need not be preserved, searched, reviewed, or produced:

1.   deleted, slack, fragmented, or other data accessible only by forensics;

2.   random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

3.   on-line access data such as temporary internet files, history, cache, cookies, and the like;

4.   data in metadata fields that are frequently updated automatically, such as last opened dates;

5.   voice messages;

6.   information contained on handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

7.   mobile device activity logs;

8.   systems, server and network logs;

9.   dynamic fields of databases or log files that are not retained in the usual course of business; and

10.  automatically saved versions of documents and emails.[3]

## VI.   Search

a)      Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but are not limited to:  Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files,

---

[3] Searching, reviewing, and producing video and audio recordings is subject to Section VI.c, *infra*.

Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, MP3 Files, MP4 Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Quicktime Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Video Media Files, Waveform Audio File Format, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File. This provision shall not affect a party's search for, collection of, or production of source code; source code files will be provided according to, and in the form required by, the Protective Order and not included in custodial data productions.[4]

      b)      If applicable, no provision of this Order affects the inspection or production of source code which will be collected and made available consistent with the Protective Order governing this case.

      c)      Video and/or audio files need not be searched, reviewed, or collected unless a party requests that the other party search and collect video and/or audio files in response to specific request(s) for production that seek specific types of video and/or audio files, subject to the producing party's objections to those requests. If the producing party disputes whether the search and collection of video and/or audio files is appropriate for the specified request(s) for production or that the request is not narrowly tailored to minimize the burden to search, review, and collect video and/or audio files, the parties agree to meet and confer to attempt to resolve the issue.

      d)      Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

---

[4] MP3 Files, MP4 Files, QuickTime Files, Video Media Files, and Waveform Audio File Format are subject to Section VI.c.

## VII.   Discovery Of Electronic Communications

a)      General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email, chats, or other forms of electronic correspondence[5] (collectively "email"). To obtain email parties must propound specific email production requests.

b)      This Order does not relieve a party from their obligation to produce any responsive, non-privileged email, chats, or other forms of electronic correspondence that are identified as part of a party's search for or collection of documents per the Federal Rules of Civil Procedure 26(b).

c)      Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

d)      Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances.

e)      Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper time frame.

f)      Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case that were not known to a party at the time this Order was entered. Cost-shifting may be considered as part of any such request.

---

[5] Other forms of electronic correspondence shall include electronic communication methods similar to email or chats, but shall not include electronic *copies* of correspondence, *e.g.*, electronic copies of letters or other correspondence in, *e.g.*, Word or PDF format.

g)      Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery.

## VIII.   Production Formats

The parties agree to produce documents consistent with the stipulation attached hereto as Ex. A.

## IX.   Documents Protected From Discovery

a)      Activities undertaken in compliance with the duty to preserve information are protected from discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

b)      Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

## X.     Privilege Log

a)      If a party reasonably determines that one or more responsive documents are not discoverable because it is subject to the attorney-client communication privilege or work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a "Privilege"), the party shall produce a log for each document or each category of documents withheld for privilege from that production. Documents may be identified on a privilege log by category, rather than individually, provided that such entries disclose the information required by Rule 26(b)(5)(A)(ii).

b)      Privileged communications that post-date the filing of the first-filed complaint need not be placed on a privilege log.

c)      For each email communication withheld as privileged, only the last-in-time email in that thread branch will be set forth on the log. For clarity, if the contents of an earlier email in the email thread are not covered by the last-in-time email, for example, because the earlier email has an attachment, the earlier email shall be considered a separate thread branch.

## XI.    Modification

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

**IT IS SO ORDERED**.

Dated: _Sept. 1, 2023_

/s/

Robert J. Krask
United States Magistrate Judge

DATED: _Sept. 1, 2023_

SECURITY FIRST INNOVATIONS, LLC

By its attorneys,

/s/ *William R. Poynter*
William R. Poynter
Virginia Bar No. 48672
KALEO LEGAL
4456 Corporation Lane, Suite 135
Virginia Beach, Virginia 23462
Telephone:  (757) 238-6383
Facsimile:  (757) 304 6175
wpoynter@kaleolegal.com

Charles B. Molster, III
Virginia Bar No. 23613
The Law Offices of Charles B. Molster, III PLLC
2141 Wisconsin Avenue, N.W., Suite M
Washington, D.C. 20007
Telephone: (202) 787-1312
Cell: (703) 346-1505
cmolster@molsterlaw.com

Andrei Iancu (*pro hac vice*)
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W.
Suite 700
Washington D.C.  20006
Tel.:   (202) 956-7500
Fax:   (202) 293-6330
SFI-Google@sullcrom.com

Garrard R. Beeney (*pro hac vice*)
Dustin F. Guzior (*pro hac vice*)
Stephen J. Elliott (*pro hac vice*)
Alexander N. Gross (*pro hac vice*)

GOOGLE LLC

By its attorneys,

/s/ *Stephen E. Noona*
Stephen E. Noona (VSB No. 25367)
Clark J. Belote (VSB No. 87310)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com
cjbelote@kaufcan.com

David A. Nelson (*pro hac vice*)
Nicholas D. Caspers (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
davenelson@quinnemanuel.com
nicholascaspers@quinnemanuel.com

David Perlson (*pro hac vice*)
Antonio M. Sistos (*pro hac vice*)
Michael F. Trombetta (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700
davidperlson@quinnemanuel.com

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel.:    (212) 558-4000
Fax:    (212) 558-3588
SFI-Google@sullcrom.com

Deepa Acharya (*pro hac vice*)
Kevin Hardy (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 E Street NW, Suite 900
Washington, DC 20001
Telephone: (202) 538-8107
Facsimile: (202) 538-8100
deepaacharya@quinnemanuel.com
kevinhardy@quinnemanuel.com

Dawn M. David (*pro hac vice*)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
2755 E. Cottonwood Pkwy., Suite 430
Salt Lake City, UT 84121
Telephone: (801) 515-7300
hannahdawson@quinnemanuel.com

## EXHIBIT A

## PROPOSED STIPULATION REGARDING
## THE FORM OF DOCUMENT PRODUCTION

A.    **Electronically Stored Information ("ESI").**

ESI shall be provided in the following format:

1.    Images. Single-page 300 dpi CCITT Group IV black and white TIFFs shall be provided. Notwithstanding the foregoing, color images shall be provided for presentation files (e.g., PowerPoint or Google Slides). The parties shall accommodate reasonable requests for production of specific images in color where color would meaningfully improve the legibility of the document. Color images shall be provided as 300 dpi JPGs.

2.    Database Load Files/Cross-Reference Files. Documents shall be provided with the following information, correlated to the beginning Bates number of each corresponding document: (1) a Concordance delimited load file(s) containing the metadata described herein; and (2) an Opticon delimited cross-reference file(s) showing document breaks.

Example of Concordance Delimited File:

þBegDocþþEndDocþþBegAttachþþEndAttachþ

Example of Opticon Delimited File:

MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,

3.    Unique IDs. Each image shall have a unique file name which shall be the Bates number of that page (e.g., BATES000001.TIFF). The Bates number must appear on the face of the image (e.g., BATES000001).

4.    Text Files. For each document, a document-level text file named for the beginning Bates number of its corresponding document (e.g., BATES000001.TXT) shall be provided. The text of non-redacted ESI shall be extracted directly from the native file. OCR text files shall be provided for redacted documents. Unless the ESI is of a type not amenable to OCR, e.g., media files, OCR text files shall be provided for documents that do not contain extractable text in the native file.

5.  Unique Documents. Custodian metadata for a given document shall reflect any Custodian of any document removed as a duplicate of that document. A party is required to produce only a single copy of a responsive document, and a party may de-duplicate responsive ESI across Custodians. A party may also de-duplicate email threads and attachments as follows: In an email thread, only the most evolved responsive email in a thread will be produced. Where an earlier-in-thread email has a responsive attachment not contained within the most evolved responsive email, the most evolved earlier-in-thread email containing the attachment will also be produced along with its attachment. An attachment is a file associated with an email for retention and storage as a single message unit.

6.  Metadata Fields. The following metadata shall be provided within the Concordance delimited file described above to the extent reasonably accessible and not subject to a justified and proper claim of privilege:

For all documents:

Md5Hash
Confidentiality (designation under Protective Order)
Custodian(s)[6]
Time Zone
ProdBegAttach
ProdEndAttach
BegBates
EndBates

Additionally, for emails:

To
From
CC
BCC
Date Sent
Time Sent
Subject

Additionally, for non-email documents:

Filename
File Extension

---

[6]Custodian metadata shall in good faith identify from whom each document was collected for production in this action, e.g., an individual or a third party. For documents collected from non-custodial sources, the producing party may just identify the producing party, e.g., Google or SFI. Further, with respect to non-email documents collected from non-custodial sources, the parties shall make good faith efforts, to the extent feasible, to also identify the document repository from which the document was collected in the Filepath metadata for any such document.

Date Created
Last Modified Date
Author
Filepath

7. Additional Metadata. Should additional metadata be reasonably accessible that if provided would significantly aid a receiving party in understanding or using the documents, if requested, the producing party shall not unreasonably withhold such metadata.

8. Native Form. The following documents shall be produced in native form: files not readily converted to images, such as media files; standalone database files such as Microsoft Excel or Access files, or equivalent Google file types to the extent that they are not converted to Microsoft file types during processing; CAD or similar engineering drawings or schematics; source code or other software; complete, functional copies of websites. The parties shall not unreasonably refuse a reasonable request for the production of other documents in native form so long as the requesting party provides a particularized explanation for the necessity of those documents in native form. To the extent that the Producing Party refuses to produce a document in native form based on the request, the parties shall meet and confer regarding that request for the production of documents in native form.

9. Other Databases. Extracts from non-standalone databases, e.g., financial databases, shall be produced natively, as a text delimited file, or where possible as Microsoft Excel or Access files.

10. TIFF Placeholder. Where documents produced natively are displaced from the production TIFF images of the documents with which they are kept in the ordinary course of business, the parties shall produce a Bates-numbered TIFF placeholder image, and associate the displaced native document with that Bates number.

B. **Hard-Copy Documents.**

Hard-copy documents shall be provided in the following format:

1. Images. Single page 300dpi CCITT Group IV black and white TIFFs shall be provided. The parties shall accommodate reasonable requests for production of specific images in color. Color images shall be provided as 300 dpi JPGs.

2. Database Load Files/Cross-Reference Files. Documents shall be provided with (1) a Concordance delimited load file(s) and (2) an Opticon delimited cross-reference file(s) showing document breaks.

Example of Concordance Delimited File :

þBegDocþþEndDocþþBegAttachþþEndAttachþ

12

Example of Opticon Delimited File:

MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,,,,
MSC000003,MSC001,D:\IMAGES\001\MSC000003.TIF,,,,
MSC000004,MSC001,D:\IMAGES\001\MSC000004.TIF,Y,,,2
MSC000005,MSC001,D:\IMAGES\001\MSC000005.TIF,,,,

3.     Unique IDs. Each image shall have a unique file name which shall be the Bates number of that page (e.g., BATES000001.TIFF). The Bates number must appear on the face of the image (e.g., BATES000001).

4.     OCR. For each document, a document-level text file shall be provided. Each text file shall be named for the beginning Bates number of its corresponding document (e.g., BATES000001.TXT).

5.     Unitizing of Documents. When scanning paper documents, the parties shall undertake reasonable efforts to ensure that distinct documents are not merged into a single record, and single documents are not split into multiple records (*i.e.*, the parties shall attempt to logically unitize scanned hard copy documents).

6.     Objective Coding Fields. The following objective coding fields shall be provided to the extent reasonably available: (i) BegBates; (ii) EndBates; (iii) ProdBegAttach; (iv) ProdEndAttach; (v) Custodian; and (vi) Filepath[7]

C.     **Production Media.** Documents shall be produced on physical electronic media or via FTP or similar electronic file transfer. Each production shall be identified by a production volume number.

D.     **Objective Coding/Metadata Format.**

The objective coding and/or ESI metadata, including extracted text, shall be provided in the following format:

       a) fields shall be delimited by the default Concordance field delimiter for ANSI character 20 (¶)
       b) String values within the fields file shall be enclosed with a text delimiter (þ)
       c) The first line shall contain objective coding and/or ESI metadata headers and below the first line there shall be exactly one line for each document
       d) Each row of objective coding and/or ESI metadata must contain the same amount of fields as the header row

---

[7] Custodian metadata shall in good faith identify from whom each document was collected for production in this action, e.g., an individual or a third party. For documents collected from non-custodial sources, the producing party may just identify the producing party, e.g., Google or SFI. Further, with respect to documents collected from non-custodial sources, the parties shall make good faith efforts, to the extent feasible, to also identify the document repository from which the document was collected in the Filepath metadata for any such document.

    e)  Multi-values shall be separated by a semicolon (;)

    f)  All files containing non-Western characters shall be provided in Unicode-compliant form.

## E.    Parties to Confer in Good Faith.

The parties agree to confer in good faith about disputes regarding the form of document production, including to resolve issues not addressed by this stipulation.